# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| In re: Ruggiero, Walter L.<br><br>  Debtor<br>---<br>Walter L. Ruggiero<br><br>  Petitioner<br>v.<br><br>US Bank National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc. 2006-NC2, Asset-Backed Pass Through Certificates Series 2006-NC2 and America's Servicing Company<br><br>  Respondents | Chapter 13<br>Case No: 12-16831-FJB<br><br><br>**DEBTOR'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Now comes the Petitioner, Walter L. Ruggiero who objects to the Proof of Claim filed by the Respondents and is in opposition to the Respondent's Objection to Confirmation of the Debtor's Chapter 13 Plan. In support thereof, the Debtor relies on the proposed findings of fact and conclusions of law as supported by the evidentiary hearing conducted on November 4, 2013.

### I.    PROPOSED FINDINGS OF FACT

1. The Debtor's deceased spouse, Diane Ruggiero signed a promissory note on July 14, 2006, agreeing to pay New Century Mortgage Corporation ("New Century") $144,900.00, at an adjustable rate starting at 10.30% over a 30 year period beginning on September 1, 2006.

2. The Debtor and his spouse granted a mortgage securing the promissory note to New Century on July 14, 2006 in the amount of $144,900.00 against their primary residence located at 38 High Street, Unit 1, Danvers, Massachusetts, which said mortgage was recorded on July 18, 2006 at the Essex South County Registry of Deeds in Book 25894 Page 124.

3. The Debtor, upon information and believe fell behind on his mortgage obligations on February 1, 2007. At the time of the default the mortgage loan was being serviced by New Century. The Plaintiff's spouse, Diane Ruggiero passed away on December 8, 2008.

4. On or about July 3, 2007, US Bank National Association, as Trustee for Asset-Backed Passed Through Certificates Series 2006-NC2 ('US Bank") filed a petition to foreclose, however, at the time of the notice of foreclosure US Bank was not the holder of the mortgage in accordance with M.G.L. ch.244 §14.

5. On October 29, 2008, the Debtor filed his first Chapter 13 bankruptcy in which, after amendments to the Chapter 13 Plan, he proposed to pay the pre-petition arrearages of $30,831.59 and maintain his regularly scheduled monthly payments. The Chapter 13 plan proposed the Debtor would make his regular scheduled monthly payments directly to the loan servicer, America's Servicing Company ("ASC").

6. The principal and interest arrearages due at the time of the filing of the first bankruptcy case on October 29, 2008 is $24,772.96. This is based on the December 5, 2008 mortgage statement from ASC (See Exhibit 99, Mortgage Statement) indicating "Overdue Payments" 05-01-07 - 12/01/08 of $26,076.80 and then subtracting the November 1, 2008 scheduled mortgage payment of $1303.84. This would have resulted in $24,772.96 being due on November 1, 2008.
(See Exhibit 96, Debtor's Payment History Chart)

7. On August 18, 2011, the Chapter 13 Trustee filed her "*Final Report and Account*" on behalf of the Debtor. According to the report, the Chapter 13 Trustee had paid $12,931.36 to US Bank for pre-petition arrearages. On July 25, 2011 the bankruptcy case was dismissed for failure to make plan payments.

8. US Bank was assigned the mortgage and therefore acquired their interests in the mortgage on October 12, 2011, which was recorded on October 14, 2011 at the Essex South County Registry of Deeds in Book 30736 Page 172.

9. After the closing of the first bankruptcy case Debtor's counsel and the Debtor investigated whether the mortgage payments made to ASC were being properly applied and whether the previous pre-petition arrearages figures were in fact correct.

10. The Debtor re-filed for bankruptcy protection on August 18, 2012 in which he proposed to pay pre-petition arrearages of $17,900.00. The estimated arrearages were based on the Debtor's payment history to ASC and the Chapter 13 Trustee's disbursements towards the pre-petition arrearages in the first bankruptcy case.

11. ASC filed a proof of claim on behalf of US Bank National Association, as Trustee for the Citigroup Mortgage Loan Trust, Inc. 2006-NC2, Asset Backed Pass Through Certificate Series 2006-NC2 in the above stated case on December 11, 2012, in the amount of $187,237.41, of which they claimed $47,874.64 in pre-petition arrearages.

12. The pre-petition arrearages consisted of alleged missed principal and interest payments between May 2, 2010 and August 16, 2012, as well as escrow shortages (escrow advances), late charges and miscellaneous fees and charges.

13. The Debtor and New Century, as well as subsequent assignees of the mortgage agreed per the mortgage contract that payments were to be applied to interest first, then principal, escrow items, late charges, other charges and lastly principal reductions.

14. ASC, as mortgage servicer for US Bank, charged fees and costs associated with a petition to foreclose against the Debtor's real property on or about July 3, 2007, when they, US Bank did not properly hold title as mortgagee, as required under MGL ch.244 §14. **US Bank, N.A. v. Ibanez**, 458 Mass. 637, 646, 648 (2011). ASC subsequently applied mortgage payments made by the Plaintiff to foreclosure related charges and fees.

15. Again, on or about August 1, 2012, ASC charged fees and costs associated with a petition to foreclose on or about May 2, 2012, when they, US Bank did not properly hold title as mortgagee, as required by MGL ch.244 §14 because the mortgage interests had been assigned to US Bank, as Trustee for Asset-Backed Pass-Through Certificates, Series 2006-NC2 when in-fact it was US Bank, as Trustee for Citigroup Mortgage Loan Trust, Inc. 2006-NC2, Asset Backed Pass Through Certificates Series 2006-NC2. The defendant, ASC subsequently applied mortgage payments made by the Plaintiff to foreclosure related charges and fees.

16. As evidenced by ASC's payment history report, they consistently misapplied payments between April 28, 2008 and January 18, 2013 to charges and fees first and/or alleged outstanding escrow items before they were applied to interest and principal, thereby increasing the amount of outstanding interest and principal beyond what would have been due on any given month.

17. This continuous misapplication of mortgage payments has caused the outstanding balance of interest and principal to be inflated, thereby distorting the amount of interest and principal due pre-petition and post-petition.

### ISSUE I

WHAT IS THE APPROPRIATE DATE IN DETERMINING WHEN US BANK, AS TRUSTEE FOR CITIGROUP MORTGAGE LOAN TRUST, INC. 2006-NC2, ASSET BACKED PASS THROUGH CERTIFICATES SERIES 2006-NC2 ACQUIRED THEIR INTERESTS IN THE MORTGAGE GRANTED FROM THE DEBTOR TO NEW CENTURY MORTGAGE CORPORATION?

## ARGUMENT I

**The appropriate date should be October 12, 2011, which reflects the date of the written Corporate Assignment of Mortgage from New Century Mortgage Corporation to US Bank, as Trustee for Citigroup Mortgage Loan Trust, Inc. 2006-NC2, Asset Backed Pass Through Certificates Series 2006-NC2.**

    **A.    Can the Pooling and Servicing Agreement alone serve as a means of assigning mortgages, without any other written proof of an assignment from the grantor to grantee under Massachusetts law?**

1. The representative, Luke Fry of ASC testified at trial that US Bank acquired its interest in the mortgage in 2006, which was at the time of the creation of the Pooling and Servicing Agreement ("PSA"). As evidence of this, Mr. Fry stated the mortgage is listed in the PSA, dated September 1, 2006 with Citigroup Mortgage Loan Trust Inc. as Depositor and US Bank National Association, as Trustee. (See Exhibit 110, Pooling and Servicing Agreement)

2. The PSA states in Article III, Section 2.01 Conveyance "the Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey to the Trustee without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor, *including any security interest* therein for the benefit of the Depositor, in and to the Mortgage Loans identified on the Mortgage Loan Schedule, the rights of the Depositor….and all other assets included or to be included in REMIC I." (See Exhibit 110, Pooling and Servicing Agreement)

3. The PSA further states in Section 11.09 Grant of Security Interest. "It is the express intent of the parties hereto that the conveyance of the Mortgage Loans by the Depositor to the Trustee be, and be construed as, a sale of the Mortgage Loans by the Depositor and not a pledge of the Mortgage Loans by the Depositor to secure debt or other obligation of the Depositor."

4. The PSA as well, references, although not clearly, what seems like the mortgage loan of the Debtors under a Mortgage Loan Schedule.

5. What the PSA does not indicate is how New Century, the original Lender and Mortgagee assigned, sold or transferred its interest in the mortgage to Citigroup Mortgage Loan Trust, Inc, as Depositor or US Bank, as Trustee.

6. The rule of law in this area has been the subject of much debate in recent years, however the Massachusetts Supreme Court's decision in US Bank v. Ibanez fully opined on this area of law. The court in *Ibanez* dealt with almost identical facts, except that the borrowers had been foreclosed against, where here the borrower has been subjected to foreclosure related fees and costs. Both instances involve US Bank, as Trustee not having proper interest in the mortgage prior to taking action as a mortgagee.

7. In *Ibanez*, the Plaintiffs, US Bank were given leave by the Land Court Judge to produce documents aside from the written recorded assignment granting the mortgage to US Bank after the foreclosure sale. US Bank provided the court with what is known as a private placement memorandum that indicated the subject mortgage in question was to be assigned into a trust in which US Bank was Trustee, well before the time of notice to foreclose. In the same case the court reviewed the circumstances surrounding the foreclosure of the LaRace mortgage. As in the Ibanez case, Larace had a mortgage that was assigned to the Trustee (Wells Fargo) after the foreclosure sale, however, the Plaintiff, Wells Fargo produced an unexecuted copy of the mortgage loan purchase agreement, which was an exhibit to the PSA. The mortgage loan purchase agreement stated the Seller, Bank of America "does hereby agree to and does hereby sell, assign, set over, and otherwise convey to the Purchaser [ABFC], without recourse, on the closing date… all of its right, title and interest in and to each mortgage loan." *Id. at 649, 650.*

8. Wells Fargo did provide the judge with a copy of the PSA, which is an agreement between the ABFC (as depositor), Option One (as servicer), and Wells Fargo (as Trustee). The PSA provided that the depositor "does hereby transfer, assign, set over

and otherwise convey to the Trustee, on behalf of the Trust... all the right, title and interest of the Depositor... in and to....each Mortgage Loan identified on the Mortgage Loan Schedules, and does hereby deliver to the trustee the original mortgage note, an original mortgage assignment in form and substance acceptable for recording," Wells Fargo submitted a schedule that it represented identified the loans assigned in the PSA, which did not include property addresses, name of mortgagors, or any number that corresponds to the loan number or servicing number on the LaRace mortgage. They contended that a loan with LaRace's property zip code and city indicated it was the LaRace mortgage. *Id at 650*

9. The court explained that in the Ibanez matter "*even if there was an executed trust agreement with the required schedule, US Bank failed to furnish any evidence that the entity assigning the mortgage – Structured Asset Securities Corporation – ever held the mortgage to be assigned.*" *Id at 650* Structured Asset Securities Corporation was the Depositor, as Citigroup Mortgage Loan Trust is the Depositor in the case at bar.

10. In the LaRace case Wells Fargo argued that the mortgage loan in question was in the PSA and the language referenced a present intent to assign and deliver the mortgage. However, there was still no evidence of the original lender/mortgagee Option One Mortgage Corporation assigning the mortgage to the trust or the depositor under the PSA.

11. The court went on to conclude that under Massachusetts law there must be proof that the assignment was made by a party that itself held the mortgage. *Id at* 651. citing In re Samuels, 415 B.R. 8, 20 (Bankr. D. Mass. 2009)

12. The court went onto contend that even a party holding the note does not without a proper written assignment of the mortgage, necessarily hold the mortgage. In some jurisdictions it is held that the mere transfer of the debt, without any assignment or even mention of the mortgage, carries the mortgage with it, so as to enable the assignee to assert his title in an action at law. This doctrine has not prevailed in Massachusetts, and

the tendency of the decisions here has been, that in such cases the mortgagee would hold the legal title in trust for the purchaser of the debt. *Id at 652.*

      **B.**      **The written, recorded assignment from New Century Mortgage Corporation to US Bank, as Trustee for Citigroup Mortgage Loan Trust 2006-NC2, Asset Backed Certificates Series 2006-NC2 serves as the appropriate means in which to determine when the mortgage was properly assigned.**

13. The Ibanez Court made it explicitly clear that the only way to convey an interest in a mortgage in the Commonwealth of Massachusetts is to follow the doctrine, *"Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor." Id. at 649* citing M.G.L. ch.183 §3. Mortgage loans are pooled together in a trust and converted into mortgage-backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home or farm and must be treated as such. *Id at 649.*

14. The court did not preclude an assignment of a mortgage(s) into a trust, however they stated such assignment must be proof that the assignment was made by a party that itself held the mortgage. *Id at 651* citing In re Samuels 415 B.R. 8, 20 (Bankr. D. Mass. 2009)

15. It is ironic that on October 12, 2011, some six (6) years after the alleged assignment of the subject mortgage into the PSA, US Bank took affirmative steps to have New Century assign to them the same mortgage they now represent to the court they own. Why assign an interest to a party that already has the interest – you in essence are assigning nothing at all.

16. The carelessness of making sure the right parties own the mortgage before taking any action to foreclose, including the charging of foreclosure related fees and costs cannot be excused away by other irrelevant documentation. The concurring opinion in *Ibanez* written by Justice Cordy articulated that *"what is surprising about these cases is*

Document    Page 9 of 13

*not the statement of principles articulated by the court regarding title law and the law of foreclosure in Massachusetts, but rather the utter carelessness with which the plaintiff banks documented the title to their assets." Id at 655.*

## ISSUE II

CAN US BANK, AS TRUSTEE FOR CITIGROUP MORTGAGE LOAN TRUST, INC. 2006-NC2, ASSET BACKED CERTIFICATES SERIES 2006-NC2 ASSESS AND CHARGE THE DEBTOR FORECLOSURE RELATED FEES AND COSTS WHEN THEY DID NOT HAVE AN INTEREST UNDER MASSACHUSETTS LAW IN THE MORTGAGE?

## ARGUMENT II

### A. Only the mortgagee can assess and charge for foreclosure related fees and costs.

17. If one concludes that the earliest date in which US Bank had an interest in the mortgage was October 12, 2011, then they could not have assessed fees and costs on the borrower/debtor for any foreclosure related fees and costs prior to that date. Prior to that date, US Bank would not have held the mortgage pursuant to Massachusetts law and would be forbidden from foreclosing, hence charging fees and costs for such activity.

18. Under Massachusetts law a mortgagee is the only party with authority to foreclose. "*The mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person, may...foreclose a mortgage,...*"
M.G.L. ch.244 §14

19. There clearly wasn't an attorney authorized under seal or any legal guardian or conservator appointed for such mortgagee. There, as well, wasn't any party that was acting in the name of US Bank to foreclose.

20. That leaves either the mortgagee or a person authorized by the power of sale as prescribed by the Mortgage between the parties. M.G.L. ch 244 does not define what a mortgagee is, however the Mortgage between the Debtor and New Century does define who the mortgagee is —"*Lender is the mortgagee under this security instrument*". (See Exhibit 101, Mortgage p. 2 of 15)

21. Prior to October 12, 2011, only New Century had the authority to foreclose against the Debtor's property or charge fees and costs in relation to foreclosure activity.

## ISSUE III

HAS THE DEBTOR OVERCOME THE BURDEN OF PRESUMPTION THAT THE PROOF OF CLAIM FILED BY US BANK, AS TRUSTEE FOR CITIGROUP MORTGAGE LOAN TRUST, INC. 2006-NC2, ASSET BACKED CERTIFICATES SERIES 2006-NC2 IS VALID AND IF HE HAS, DID US BANK PERSUADE THE COURT BY A PREPONDERANCE OF EVIDENCE THAT THEIR CLAIM SHOULD BE ALLOWED IN FULL?

## ARGUMENT III

**A. The standard of review in determining Objections to Claims.**

22. The standard of review under an Objection to Claim has been determined to be one of a burden shifting approach. The proof of claim filed by US Bank is presumed valid unless there is "substantial evidence" contradicting the validity of the claim. If the objecting party produces substantial evidence contradicting the claim, then the burden shifts back to the claimant to proof by a preponderance of evidence that their claim is valid. *Juniper Dev. Group v. Kahn* (In re Hemingway Transp., Inc.), 993 F.2d. 915, 925 (1st Cir. 1993)

### B. The Debtor provided substantial evidence that overcame the presumption of validity in regards to the proof of claim.

23. The Debtor presented evidence that the principal and interest payments that were overdue as of his first bankruptcy filing on October 29, 2008 was $24,772.97. The mortgage statement presented as (Exhibit 99, Mortgage Statement) showed the monthly statement from America's Servicing Company dated December 5, 2008 indicating payments of principal and interest due from May 1, 2007 through December 1, 2008 with a total of $26,076.80 as overdue. This would amount to $24,772.97 when you remove the November 1, 2008 payment, since that payment would be considered post petition.

24. When ASC's representative, Luke Fry was questioned by Debtor's counsel as to why the mortgage statement dated December 5, 2008 conflicted with the overdue mortgage payments on the proof of claim, he did not know why such a discrepancy existed.

25. When considering the payment history of the Debtor as evidenced by (See Exhibit 96, Debtor's Payment History Chart) and that such Payment History Chart is supported by cancelled checks the Debtor has presented substantial evidence refuting the amount allegedly owed under the proof of claim, short of any fees and costs allowable under the circumstances of this case.

### C. US Bank's claim has not been substantiated by a preponderance of evidence.

26. US Bank disputes the accuracy of the Debtor's payment history, however they acknowledged through the testimony of their own witness, Mr. Fry that all of the payments indicated on the Debtor's Payment History Cart had in fact been made.

27. Their own payment history doesn't show the total pre-petition amounts outstanding at the date of the first bankruptcy filing on October 29, 2008 and the Bankruptcy Payment History (See Exhibit 104, Bankruptcy Payment History) shows $44,495.26 overdue as of August 16, 2012, a figure that doesn't even match up with the pre-petition arrearages claimed in the second bankruptcy case. (See Exhibit 107, Proof of Claim 3-1).

28. The standard of proof when the burden is shifted back to the claimant, US Bank is by a preponderance of evidence. The claimant's payment history includes overdue payments that are directly contradicted by their mortgage servicer's own mortgage statement, their own payment history doesn't indicate how they came to the arrearage amounts in their proof of claim filed on December 11, 2012, and they include fees and costs from foreclosure related activities where they didn't have proper interest in the mortgage itself, thereby rendering those fees and costs invalid.

## CONCLUSION

For the foregoing reasons the Debtor's Objection to Claim should be sustained and the Respondent's Objection to Confirmation be overruled.

Respectfully submitted,
Walter L. Ruggiero
by his Attorney

November 18, 2013

/s/ Paul D. McCarthy
_____
Paul D. McCarthy
McCarthy and Molloy
65A Flagship Drive
North Andover, MA  01845
Attorney for Debtor
(978) 975-4190 telephone
(866) 843-6431 facsimile
BBO#642961
lawoffice@mccarthyandmolloy.com

# CERTIFICATE OF SERVICE

I, Paul D. McCarthy, hereby certify that I have served on behalf of the Debtor, this 18th day of November 2013, this *Post Trial Brief on Proposed Findings of Fact and Conclusions of Law,* by certified mail return receipt and regular mail postage prepaid to the Respondents:

America's Servicing Company
Richard Hallworth, CEO
1 Home Campus
Des Moines, IA. 50328

US Bank National Association
Jan Estep, President
425 Walnut Street
Cincinnati, OH. 45202

*copy to:*
Attorney Rian K. Vernon
Harmon Law Offices
P.O. Box 610389
Newton Highlands, MA. 02461

If service was made by personal service, by residence service or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

November 18, 2013

Paul D. McCarthy
McCarthy and Molloy
65A Flagship Drive
North Andover, MA  01845
Attorney for Debtor
(978) 975-4190 telephone
(866) 843-6431 facsimile
lawoffice@mccarthyandmolloy.com
BBO#642961